## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

David M. Martinko

    v.                                  Case No. 19-cv-221-SM

Warden, New Hampshire State
Prison for Men

### REPORT AND RECOMMENDATION

The respondent, the Warden of the New Hampshire State Prison for Men, has moved to dismiss David M. Martinko's March 2019 petition for writ of habeas corpus, filed under 28 U.S.C. § 2254 (Doc. No. 1), on the grounds that Martinko did not file the petition within the one-year statute-of-limitations period applicable to federal habeas claims. See Resp't's Mot. to Dismiss (Doc. No. 9). The Warden contends that the one-year limitations period for Martinko to file the instant § 2254 petition began running in July 2014, when the judgment against Martinko became final, was not tolled by any statutory or equitable mechanism, and expired in July 2015. Martinko disagrees, arguing that certain factual and procedural events tolled the expiration of the limitations period until after March 2019. Additionally, he asserts that his 2017 discretionary appeal to the New Hampshire Supreme Court concerning his motion to vacate his pleas, as well as an October 2018 amendment to his sentence, reset the clock for timely filing his federal habeas claims. As discussed herein, the

1

district judge should dismiss Martinko's untimely petition, as his statute-of-limitations and equitable-tolling arguments misconstrue how the applicable law applies to his case.

## I.   **Background**

### A.   **Martinko's conviction and sentencing**

On June 13, 2014, David Martinko pled guilty pursuant to a plea agreement with the State to three informations charging him with aggravated felonious sexual assault under the pattern sexual assault statute, N.H. Rev. Stat. Ann. § 632-A:2, III. Each information charged Martinko with a pattern of assaults that spanned different time periods: the first information charged assaults that occurred between September 1, 2010 and August 31, 2011; the second charged assaults that occurred between September 1, 2011 and August 31, 2012; and the third charged assaults that occurred between September 1, 2012 and October 31, 2013.  See State v. Martinko, 171 N.H. 239, 241, 194 A.3d 69, 71 (N.H. 2018), cert. denied, 139 S. Ct. 2638 (2019). As the factual basis for Martinko's conviction and sentence, the State proffered that:

> On October 31, 2013, the defendant went to the Dover Police Department and confessed that he had sexually assaulted the fifteen-year-old victim on the preceding night.  On November 1, 2013, the victim participated in a forensic interview in which she confirmed that she had been sexually assaulted by the defendant on October 30.  She also reported that the assaults began when she was four or five years of age when they were living out of state.  The defendant continued to

> sexually assault the victim after they moved to New
> Hampshire in 2010.  The abuse happened every night or
> every other night until just before her fourteenth
> birthday when she told him to stop; thereafter he
> assaulted her approximately once a month.

Id.

Prior to entering the plea agreement, Martinko "raised the issue of Double Jeopardy with [his trial counsel]."  Martinko Apr. 20, 2017 Mot. to Vacate Plea and Sentences, State v. Martinko, No. 219-2013-CR-151 (N.H. Super. Cty., Strafford Cty.) (Doc. No. 1-2, at 20).  Martinko's trial counsel advised him that neither the New Hampshire Constitution nor the United States Constitution's Double Jeopardy Clauses applied to his plea agreements.  See id.  On this advice, Martinko entered three pleas of guilty.  The Strafford County Superior Court, in turn, accepted the negotiated pleas, entered judgment against Martinko, and imposed three consecutive sentences.  Martinko did not file a direct appeal.

B.  **Post-conviction relief sought in state court**

While serving his sentence in the state prison, Martinko allegedly learned for the first time from other inmates that his conviction and sentence could violate the principle of double jeopardy.  On or about November 27, 2015, Martinko filed a post-conviction motion to appoint counsel in Superior Court to aid him in making a collateral attack on his conviction and sentence.  Though this motion was ultimately denied on January

3

27, 2016, Martinko continued to research the legal issues
involved in the charges against him and his negotiated plea.

In April 2016, attorney Jared Bedrick allegedly agreed to
assist Martinko with his post-conviction claims on a pro bono
basis on the condition that Bedrick's paying clients would come
first. Over the next eight months, the two communicated over
telephone or mail at least once a month. In December 2016,
Bedrick allegedly notified Martinko that Bedrick had joined a
new firm and could no longer assist Martinko. Martinko then
sought new counsel with financial assistance from his family.

On or about April 20, 2017, Martinko, through newly
retained counsel, filed a motion to vacate his 2014 guilty pleas
in Superior Court. In that motion, he argued that the three
pattern aggravated-felonious-sexual-assault informations
violated the Double Jeopardy Clauses of the state and federal
Constitutions because "they charged three separate sets of acts
during overlapping time periods, alleging identical variants of
sexual behavior that occurred at the same location." Martinko,
171 N.H. at 241, 194 A.3d at 72 (internal quotation marks
omitted). He further argued that his trial counsel was
ineffective for failing to advise him of the double jeopardy
violations. See id.

On June 7, 2017, the Superior Court denied Martinko's
motion, finding that "the State's charges allege[d] three

4

separate sets of acts during three discrete time periods." Id. (internal quotation marks omitted).  The New Hampshire Supreme Court ("NHSC") granted Martinko a discretionary appeal and, on August 17, 2018, affirmed that the State was permitted to seek separate convictions on the three informations alleging successive one-year offenses for pattern sexual assault without violating Martinko's protection against double jeopardy under either the state or federal Constitutions. 171 N.H. at 244-45, 194 A.3d at 74-75.  The NHSC also ruled that Martinko's ineffective assistance of counsel claim lacked merit. Id. Martinko then petitioned the United States Supreme Court for certiorari review, but the Court denied review on May 28, 2019. See Martinko v. New Hampshire, 139 S. Ct. 2638 (2019).

C.    **Amendment to Martinko's sentence**

On October 18, 2018, Martinko petitioned the Superior Court to make two changes to his sentence.  See Martinko Oct. 10, 2018 Mot. to Amend Sentence, Martinko, No. 219-2013-CR-521.  First, he requested that the Superior Court reconsider its prior orders refusing to vacate the remaining portion of that court's no-contact order.  Id. ¶¶ 1-11.  The Superior Court denied this request.

Second, Martinko requested that the Superior Court amend the wording of Paragraph 5 of his third sentence (Charge ID 936557c), which suspended that sentence upon his participation

in a sexual offender program.  Specifically, Martinko asked that
the court change the phrase "may be suspended by the Court on
application of the defendant" to "shall be suspended" because
the word "may" did not conform with the terms of his plea
agreement.  See id. ¶¶ 12-16.  In Martinko's view, "may" implied
a discretionary suspension of his sentence.  The language of his
plea agreement, however, suggested a guarantee of suspension
once Martinko demonstrated meaningful participation in a sexual
offender program.  See id.

Five days later, on October 23, the Superior Court agreed
with Martinko as to his second argument and amended Martinko's
third sentence as requested.[1]  See Oct. 29, 2018 Order on Mot. to
Amend Sentence, Martinko, No. 219-2013-CR-521.  In doing so, the
court did not resentence Martinko.  Instead, the court made
clear that "the remainder of the sentence on Charge ID 936557c
remain[ed] as imposed on June 13, 2014," and as amended by
subsequent orders concerning contact.  Id.

---

[1] As amended:

> All of the minimum sentence ~~may be suspended by the
> Court on application of the defendant~~ shall be
> suspended provided the defendant demonstrates
> meaningful participation in a sexual offender program
> while incarcerated.

See Oct. 29, 2018 Order on Mot. to Amend Sentence, Martinko, No.
219-2013-CR-521.

D.    **The instant petition for federal habeas relief**

On March 1, 2019, Martinko, without counsel, filed the instant § 2254 petition by placing his petition in the prison mail system.  See Morales-Rivera v. United States, 184 F.3d 109, 109 (1st Cir. 1999).  Therein, Martinko raised two grounds for relief which mirror the two claims raised in his April 2017 state court motion to vacate, and his appeal therefrom.  First, he contends that the State charged him with multiple counts of the same offense in violation of his right to protection against double jeopardy.  Second, he argues that his trial counsel provided ineffective assistance by advising him that his sentences would not subject him to double jeopardy.

On April 16, 2020, the undersigned magistrate judge issued a Report and Recommendation ("R&R") (Doc. No. 4) recommending that the habeas petition be dismissed as untimely, citing 28 U.S.C. § 2244(d)(1)(A).  On April 27, 2020, Martinko filed a document titled "Petitioner's Reply to the Court's Recommendation[,] An Amendment to the Record[,] Correction of the Record[,] and Expansion of the Record" (Doc. No. 5), which the court construed as an addendum to his § 2254 petition.  The court then screened the "addendum," pursuant to Rule 4 of the Rules Governing § 2254 Cases ("§ 2254 Rules") and LR 4.3(d)(4)(A), to determine whether Martinko had stated facially valid claims.

On a second review, the undersigned magistrate judge found that the petition, as addended, included federal claims that did not appear to be facially invalid.  See May 5, 2020 Order (Doc. No. 6) at 1-2.  Accordingly, the undersigned magistrate judge directed the service of Martinko's petition on the New Hampshire Office of the Attorney General and vacated the April 16, 2020 R&R.  Id. at 2.  The court did so without taking a position on the timeliness of Martinko's petition and without prejudice to the Warden's ability to move to dismiss.  Id.

## II.  Statute of limitations for § 2254 petitions

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") and its amendments to 28 U.S.C. § 2254 establish a one-year limitations period for state prisoners to file a federal petition for habeas corpus relief.  See 28 U.S.C. § 2244(d)(1).  Typically, the limitations period starts on the date on which the state court judgment becomes final "by the conclusion of direct review or the expiration of the time for seeking such review."  Id. § 2244(d)(1)(A).  In New Hampshire, the time for a criminal defendant to seek direct review generally expires thirty days after the trial court enters judgment.  N.H. Sup. Ct. R. 7(1)(C) (establishing that criminal appeals must be filed "within 30 days from the date of sentencing"); see also N.H. Super. Ct. R. 46(d) (establishing that when no notice of appeal is filed, final judgment "shall be

8

entered" thirty-one days after the date of the trial court's
verdict or decree).

Under 28 U.S.C. § 2244(d)(1), however, the limitations
period may not begin to run until a later date, such as:

> (B)  the date on which the impediment to filing an
> application created by State action in violation
> of the Constitution or laws of the United States
> is removed, if the applicant was prevented from
> filing by such State action;
>
> (C)  the date on which the constitutional right
> asserted was initially recognized by the Supreme
> Court, if the right has been newly recognized by
> the Supreme Court and made retroactively
> applicable to cases on collateral review; or
>
> (D)  the date on which the factual predicate of the
> claim or claims presented could have been
> discovered through the exercise of due diligence.

Id. § 2244(d)(1)(B)-(C).  Additionally, if a petitioner files a
proper "application for State post-conviction or other
collateral review with respect to the pertinent judgment or
claim," the time during which such an application is pending
"shall not be counted toward any period of limitation."  Id.
§ 2244(d)(2).  State post-conviction proceedings filed after the
expiration of the statute of limitations, however, do not
typically reset the limitations clock.  See Trapp v. Spencer,
479 F.3d 53, 58-59 (1st Cir. 2007); Cordle v. Guarino, 428 F.3d
46, 48 n.4 (1st Cir. 2005).

The one-year limitations period established by § 2244 may
also be subject to tolling for equitable reasons not articulated

in § 2244(d) in "appropriate cases" where a petitioner shows
"that he [or she] has been pursuing his [or her] rights
diligently," and "that some extraordinary circumstance stood in
his [or her] way" to prevent timely filing. Holland v. Florida,
560 U.S. 631, 645, 650 (2010) (internal citation omitted); see
also Riva v. Ficco, 615 F.3d 35, 39 (1st Cir. 2010). The one-
year limitations period for filing federal habeas claims can
also be reset if a change to a petitioner's sentence results in
a "new judgment" from which the petitioner seeks habeas relief.
See Magwood v. Patterson, 561 U.S. 320 (2010).

### III. **Analysis**

The Warden contends that Martinko's § 2254 petition for
habeas relief should be dismissed as untimely because Martinko
filed the petition in March 2019, nearly three-and-a-half years
after the limitations period for his habeas claims purportedly
lapsed. In the Warden's view, the one-year limitations period
for Martinko's claims began running on July 13, 2014 — the date
on which Martinko's right to seek direct review of the trial
court's June 13, 2014 judgment expired – and then continued to
run without interruption by any circumstance warranting
statutory or equitable tolling until July 13, 2015.[2]

---

[2] As noted earlier in this R&R, final judgment in a Superior
Court action is entered thirty-one days after the date of the
trial court's decree. See N.H. Super. Ct. R. 46(d). In this
case, that would have been Monday, July 14, 2014 and his
limitations period, if uninterrupted, would have expired on July

Martinko disputes this analysis and proposes three
alternative statute-of-limitations "scenarios" that, if sound,
would make his instant petition timely.  First, Martinko
contends that the applicable limitations period did not begin
until approximately November 27, 2015, when he allegedly learned
of the factual predicate underlying his habeas arguments, and
was then subject to multiple applications of statutory and
equitable tolling that extended the filing deadline past March
2019.  Second, he argues that, even if the limitations period
for filing a federal habeas petition originally expired in 2015,
his discretionary appeal before the New Hampshire Supreme Court
in 2018 restarted AEDPA's statute-of-limitations clock and
tolled the time to file federal habeas claims until after the
U.S. Supreme Court denied review in May 2019.  Last, he asserts
that the October 23, 2018 amendment to his sentence resulted in
a new, intervening judgment, which gave him until at least
October 2019 to timely file habeas claims concerning that new
judgment in this court.

As discussed below, none of these scenarios render
Martinko's instant petition timely.  Despite his assertions,
which this court takes as true in its consideration of a motion
to dismiss filed under Rule 12(b)(6), Martinko has not asserted

---

14, 2015.  See also id. R. 2 (computation of time).  That
distinction, however, does not impact this court's
recommendation of dismissal.

facts demonstrating that the applicable limitations period began
to run on November 27, 2015, that he is entitled to statutory or
equitable tolling, or that a post-conviction decision by any
court restarted the one-year limitations period that originally
expired in July 2015.  The district judge should therefore
dismiss Martinko's § 2254 petition as untimely.

A.    **First scenario: Statutory and equitable tolling**

Martinko first contends that the one-year limitations
period for his federal habeas claims began to run on
November 27, 2015 — when he filed a motion to appoint counsel —
and was subsequently tolled by two events — his pro bono
counsel's (alleged) abandonment and his state-court collateral
review proceedings.  He argues that, as a result, the
limitations period did not expire until October 2019.  This
argument falls short for several reasons.

1.   November 27, 2015 start date

First, Martinko misconstrues how the AEDPA's statute of
limitations applies to his case.  Under 28 U.S.C. § 2244(d)(1),
the statute of limitations for federal habeas claims arising
from a state-court conviction runs from the "latest" of several
specified dates.  One such date is the date on which the state
court judgment becomes final "by the conclusion of direct review
or the expiration of the time for seeking such review" (here,
July 14, 2014).  Id. § 2244(d)(1)(A).  Another is "the date on

12

which the factual predicate of the [habeas claim] could have been discovered through the exercise of due diligence." Id. § 2244(d)(1)(D).

Martinko argues that the latter date controls the timeliness of his federal habeas claims because he did not learn of the "factual predicate" for his double-jeopardy argument until speaking with other state-prison inmates. Martinko alleges that these inmates told him he was incorrectly advised by trial counsel that his guilty pleas presented no double jeopardy issues. Martinko therefore asserts that the statute of limitations on his double jeopardy-based habeas claims did not start until November 27, 2015, when he sought appointed counsel from the court to aid him in understanding and advancing this potential habeas issue.

The phrase "factual predicate," as used in § 2244(d)(1)(D), however, means "evidentiary facts or events," not "legal consequences of the facts." Holmes v. Spencer, 685 F.3d 51, 59 (1st Cir. 2012) (internal citation and quotation marks omitted). As such, "ignorance of the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing" or otherwise push back the deadline to file if the petitioner knows the important facts underlying a claim. See Marsh v. Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (citation and internal quotation marks omitted); see also Delaney v. Matesanz, 264 F.3d

13

7, 15 (1st Cir. 2001) (citing Marsh, 233 F.3d at 1220); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000) (Under § 2244(d)(1)(D), "[t]ime begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.").

Here, the principal facts underlying Martinko's habeas claim — the three informations against him, the conduct and time frames alleged therein, and his trial counsel's advice regarding the plea agreement and double jeopardy — were known to Martinko, at the latest, when he pled guilty on June 13, 2014. Martinko concedes as much, in his objection, by noting he specifically asked his state trial counsel "if the plea deal offered by the state violated his double jeopardy rights." See Pet'r's Obj. to the Resp't's Mot. to Dismiss (Doc. No. 10) at 10. That his trial counsel's "advice may have been flawed, and could potentially form the foundation for an ineffective assistance claim" are not factual matters, but rather "the legal consequences of those facts — matters of law that are beyond the purview of § 2244(d)(1)(D)."[3] Holmes, 685 F.3d at 60.

---

[3] This is not to say that Martinko's trial counsel in fact provided ineffective assistance or erroneous legal advice. To the contrary, both the Strafford County Superior Court and the NHSC concluded that trial counsel was neither ineffective nor mistaken, and that Martinko's sentence for pattern sexual assault did not constitute a double jeopardy violation. See Martinko, 171 N.H. at 241, 194 A.3d at 72; June 7, 2017 Order on Mot. to Vacate Plea and Sentence, Martinko, No. 219-2014-CR-521 (Doc. No. 1-2, at 29). For purposes of the Warden's timeliness challenge, however, this court need not make any determination

Accordingly, Martinko's "discovery that his attorney's advice was allegedly misleading . . . is ultimately unavailing" for purposes of calculating the statute-of-limitations start date under § 2244(d)(1). Holmes, 685 F.3d at 59. Instead, the date his state court judgment became final controls the timeliness of his double-jeopardy-based petition. See § 2244(d)(1)(A). Under that timeline, the statute-of-limitations period began in July 2014 and then ran uninterrupted for one whole year, uninterrupted by any tolling events, before expiring in July 2015. And as the Warden notes, this is well before Martinko filed his instant petition in this court.

2.  Equitable tolling for alleged attorney abandonment

Even if Martinko were correct that he first learned of the factual predicate, as opposed to the legal predicate, for his double jeopardy-based habeas claims on or about November 27, 2015, when he filed his motion to appoint counsel, he has still failed to show that his petition would be timely as a result of subsequent tolling.

Assuming, arguendo, that Martinko's motion to appoint counsel triggered a later statute-of-limitations start date under § 2244(d)(1), and that this motion was "a properly filed application for State post-conviction or other collateral review" under § 2244(d)(2), the statute-of-limitations clock for

_____

as to the merits of Martinko's assertion. It simply takes the assertion as true.

15

federal habeas relief would have been tolled while Martinko's motion was pending.  On January 27, 2016, the Superior Court denied the motion.  See Jan. 27, 2016 Order on Mot. to Appt. Counsel, Martinko, No. 219-2013-CR-521 (Doc. No. 1-2, at 18). Because Martinko did not appeal that denial, the statute of limitations would have begun running on January 27, 2016 and ultimately would have expired one year later, on January 27, 2017, unless subject to further tolling.

Recognizing this, Martinko contends he is entitled to equitable tolling for the period between April 1, 2016 and November 30, 2016 because he was allegedly abandoned by Attorney Jared Bedrick.  If so, Martinko's instant habeas petition would be timely, as the filing of his motion to vacate in Superior Court on April 20, 2017 would have further tolled the limitations period while that post-conviction motion was pending, until May 28, 2019 — when the United States Supreme Court declined certiorari review.  But as discussed below, that is not the case here, as neither Bedrick's representation of Martinko nor any suggested negligence by Bedrick constitutes an "extraordinary circumstance" that warrants equitable tolling.

Equitable tolling "enables a court to extend a statute of limitations for equitable reasons not in the language of the statute itself."  Holmes, 685 F.3d at 62; see also Holland, 560 U.S. at 649 ("Equitable tolling . . . asks whether federal

16

courts may excuse a petitioner's failure to comply with federal timing rules . . . ."). Equitable tolling, however, is "the exception rather than the rule." Holmes, 685 F.3d at 62 (quoting Trapp, 479 F.3d at 59).

To show an entitlement to equitable tolling, the petitioner "bears the burden of establishing two elements: (1) that he [or she] has been pursuing his [or her] rights diligently, and (2) that some extraordinary circumstance stood in his or [her] way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); see also Holland, 560 U.S. at 649; Neverson v. Farquharson, 366 F.3d 32, 41 (1st Cir. 2004). "[U]nprofessional attorney conduct may, in certain circumstances, prove 'egregious' and can be 'extraordinary,'" thus warranting equitable tolling, if such circumstances actually caused the untimely filing. Holland, 560 U.S. at 651; Holmes, 685 F.3d at 62. A "garden variety claim of excusable neglect," such as a simple miscalculation that leads a party to miss a deadline, however, does not typically warrant such equitable relief. Holmes, 685 F.3d at 62.

In Holland, for example, the Supreme Court held that the limitations period for a prisoner's habeas petition was subject to equitable tolling where the prisoner's attorney "did not do the research necessary to find out the proper filing date," failed to inform his client that the state supreme court had decided his case, and "failed to communicate with his client

17

over a period of years," despite the client's various pleas for information and action. 560 U.S. at 652. The Court found that these and other facts suggested "serious," if not extraordinary, "instances of attorney misconduct" that precluded the prisoner from making a timely filing. Id. Additionally, the prisoner's numerous communications to his attorney evidenced that he acted with reasonable diligence in pursuing his federal habeas claims. See also id. at 653 (noting that "the very day [the prisoner] discovered that his AEDPA clock had expired due to [his attorney's] failings, [he] prepared his own habeas petition pro se and promptly filed it with the District Court").

By comparison, in Cadet v. Fla. Dep't of Corr. — a case cited by Martinko — the Eleventh Circuit Court of Appeals held that an attorney's gross negligence did not constitute attorney abandonment even though such negligence harmed the prisoner's interests. 853 F.3d 1216, 1233-34 (11th Cir. 2011). There, the attorney genuinely misinterpreted the filing deadline for the prisoner's federal habeas petition and failed to conduct any further research into the matter, despite the prisoner's "persistent challenges to his calculation." Id. at 1233. Nevertheless, the court ruled that the attorney's "negligence in missing the filing deadline [did] not mean that he abandoned or effectively abandoned" the prisoner. Id. at 1234. The court noted that, despite the mistake, the attorney maintained regular

contact with the prisoner, discussed the case on a number of occasions, responded to many inquiries and concerns about the federal filing deadline, and did not abandon his client without notice. Id. at 1235. It thus found that the attorney's negligent misreading was "the kind of attorney error regarding the § 2244(d) statute of limitations provisions that the Supreme Court, [the Eleventh Circuit], and other courts ha[d] held does not qualify as an extraordinary circumstance warranting equitable tolling." Id.

Here, Martinko has not shown that he pursued his rights diligently or that his challenge in filing a timely habeas petition, despite his trial counsel's purported error and Bedrick's purported abandonment, constitutes an "extraordinary circumstance" for purposes of equitable tolling. In his filings, Martinko merely alleges that Bedrick agreed in April 2016 to assist him with his habeas claims pro bono, that the two "were in communication via telephone and mail every month," and that, in December 2016, Bedrick allegedly notified Martinko that he could no longer provide assistance because he had joined a new law firm. See Pet'r's Resp. to Ct.'s R&R (Doc. No. 5) at 6.

Martinko argues that these events "were unforeseeable by both client and attorney, and therefore [were] rare and extraordinary." Id. at 7. But in doing so, Martinko cites no authority demonstrating that these circumstances, even at their

worst, present anything other than a "garden variety" claim of attorney misconduct or "excusable neglect."  See Holland, 560 U.S. at 652.  Unlike the petitioner in Holland, Martinko has not alleged that Bedrick failed to keep him informed of key developments in his case, failed to respond to his inquiries or concerns, or failed to communicate over a significant period of time.  To the contrary, Bedrick allegedly maintained regular contact with Martinko and notified Martinko when he could no longer assist Martinko with his habeas claims.  Compare Cadet, 853 F.3d at 1235 (no abandonment where attorney maintained regular contact) with Maples v. Thomas, 565 U.S. 266, 287 (2012) (abandonment where two attorneys wholly deserted their client without notice, thereby leaving him "without any functioning attorney of record").

Additionally, Martinko does not explain how Bedrick's conduct prevented him from diligently filing a federal habeas petition or another state court application for post-conviction relief within one year of the Superior Court denial of his motion to appoint counsel (assuming arguendo, of course, that the filing of this motion started the statute of limitations clock).  Martinko does not allege that Bedrick engaged in any attorney misconduct in the eight months of representation, or that Bedrick misinformed him about filing deadlines.  And even if Attorney Bedrick did do so, such negligence, gross

negligence, or mistake typically would not constitute a rare or extraordinary circumstance that would excuse Martinko's late-filing of his petition.  See Cadet, 853 F.3d at 1235 (explaining that inadvertent failures to file a petition for post-conviction relief on time is a type of error "constructively attributable" to the prisoner); Logan v. Maine, No. CIV. 10-353-P-W, 2010 WL 4781147, at *4, 2010 U.S. Dist. LEXIS 121911, at *14 (D. Me. Nov. 16, 2010) (finding "an evident lack of reasonable diligence on [the petitioner's] part in meeting" a state statute of limitations, even after crediting the claims that his attorney was dilatory), R&R approved No. 2:10-CV-00353-JAW, 2010 WL 5207602, at *1, 2010 U.S. Dist. LEXIS 133310, at *1 (D. Me. Dec. 15, 2010).

Martinko's incarceration, lack of prior legal training, and limited access to legal resources during this time similarly fail to justify his late filing.  While, "in unusual cases, certain limitations of imprisonment may rise to the level of 'extraordinary circumstance' . . . the usual problems inherent in being incarcerated," such as a prisoner's lack of prior legal training or limited access to legal resources in a prison's library, do not, by themselves, justify equitable tolling. Holmes, 685 F.3d at 62-63; see also Baker v. Norris, 321 F.3d 769, 771-72 (8th Cir. 2003) (no equitable tolling where prisoner granted only limited access to library); Delaney, 264 F.3d at 15

(no equitable tolling where the prisoner, acting pro se,
proclaimed himself to have been ignorant of the applicable law).
Martinko has alleged no facts here that differentiate his
conditions from those of any other inmate.  And though Martinko
allegedly sought new counsel immediately after Bedrick switched
firms, his efforts to find new counsel do not excuse his failure
to file a pro se petition for post-conviction relief on or
before January 27, 2017 — the purported deadline for a November
27, 2015 statute-of-limitations start date.  See Mack v. Falk,
509 F. App'x 756, 760 (10th Cir. 2013) (finding that retention
of counsel was not enough to toll AEDPA's limitations period).

     Finally, Martinko argues that the Warden should be
precluded from any motion to dismiss because the State is
withholding mail logs that would "prove not only the existence
of contact but the frequency of [his] contact, apart from phone
calls," with Bedrick.  See Pet'r's Obj. to Resp't's Mot. to
Dismiss (Doc. No. 10) at 3-4, 12-15.  The court need not take a
position on this potential evidentiary issue at this time.
Martinko's allegations, taken as true at this stage of the case,
do not show that he pursued his rights to collateral review
diligently or that some extraordinary circumstance stood in his
way which prevented timely filing of a § 2254 petition (or any
other application for post-conviction relief that would further
toll § 2254's statute of limitations).  As such, he is not

22

entitled to equitable tolling, and his instant petition would be untimely even if the statute of limitation's period began to run on November 27, 2015.

B.    **Second scenario: Limitations period reset by NHSC appeal**

As a second alternative start date, Martinko argues that "even if the time to file a federal habeas had expired" in January 2017 or some date earlier, the NHSC's grant of a discretionary appeal under New Hampshire Supreme Court Rule 7, "reset the clock" for filing federal habeas claims.  Pet'r's Obj. to Resp't's Mot. to Dismiss (Doc. no. 10) at 5.  He bases this argument on the Supreme Court's decision in Jimenez v. Quarterman, 555 U.S. 113 (2009).  But Jimenez did not concern untimely appeals of post-conviction habeas relief motions and thus is distinguishable from this case.

In Jimenez, a state prisoner was granted leave to file an out-of-time direct appeal by a state court nearly seven years after he was convicted.  Id. at 116.  The state court eventually denied his direct appeal and his post-conviction motions for relief.  The petitioner then filed a federal habeas petition for the first time, which the district court dismissed as untimely.  The Supreme Court reversed on "narrow" grounds, holding that:

> where a state court grants a criminal defendant the
> right to file an out-of-time direct appeal during
> state collateral review, but before the defendant has
> first sought federal habeas relief, his judgment is
> not yet "final" for purposes of § 2244(d)(1)(A).  In

23

> such a case, "the date on which the judgment became
> final by the conclusion of <u>direct review</u> or the
> expiration of the time for seeking such review" must
> reflect the conclusion of the out-of-time <u>direct</u>
> <u>appeal</u>, or the expiration of the time for seeking
> review of that appeal.

<u>Id.</u> at 121 (emphasis added).

Martinko, by comparison, never filed a direct appeal of his conviction. Instead, he filed a post-conviction motion to vacate his guilty pleas. His motion constitutes a collateral attack on a judgment that can toll, but not reset, the one-year AEDPA limitations period. <u>Martinko</u>, 171 N.H. at 242, 194 A.3d at 72 (recognizing Martinko's motion to vacate his plea as a collateral attack on the state court's final judgment); 28 U.S.C. § 2244(d)(2) (provision that allows tolling of the AEDPA limitations period while collateral review is pending). And unlike in <u>Jimenez</u>, neither the Superior Court's order denying Martinko's motion to vacate nor the NHSC's order affirming that denial reopened or reset the period for Martinko to seek direct review.

In his objection, Martinko suggests that his discretionary appeal constituted "a direct appeal as a part of collateral review," which rendered the Superior Court judgment against him not yet final for purposes of § 2244(d)(1)(A). Pet'r's Obj. to Resp't's Mot. to Dismiss (Doc. No. 10) at 5. But this position misconstrues the difference between direct and collateral review. Though the habeas statute defines neither "direct

review" nor "collateral review", the U.S. Supreme Court has made clear that the two terms, as used in the habeas context, refer to separate and distinct review processes.  See <u>Wall v. Kholi,</u> <u>562 U.S. 545, 552-53 (2011)</u>.  Collateral review, by definition, "means a form of review that is not part of the direct appeal process." <u>Id.</u>; <u>see</u> <u>also</u> <u>Collateral Attack</u>, *Black's Law* *Dictionary* (11th ed. 2019) ("An attack on a judgment in a proceeding other than a direct appeal," which is typically "made against a point of procedure or another matter not necessarily apparent in the record, as opposed to a direct attack on the merits exclusively.").  As such, a petitioner cannot bring a direct appeal challenging the judgment against him or her on collateral review.[4]

Here, Martinko filed his motion to vacate his pleas months after the period to file a timely federal habeas petition on double jeopardy grounds expired.  If he had timely filed his motion before the expiration of the AEDPA limitation's period, the deadline to file a habeas petition may have been extended under <u>§ 2244(d)(2)</u>.  But he did not.  And his subsequent appeal of his collateral challenge did not reset the limitations

---

[4] This is not to say that a petitioner cannot directly attack the judgment against him or her if, as a result of collateral review, the court grants him or her that right to do so, <u>see,</u> <u>e.g.,</u> <u>Jimenez, 555 U.S. at 116,</u> or materially changes the terms of the underlying judgment and sentence against the prisoner, <u>see,</u> <u>e.g.,</u> <u>Magwood, 561 U.S. at 326.</u>

period.  As such, Martinko's § 2254 petition is untimely despite
the NHSC's grant of a discretionary appeal.

C.    **Third Scenario: Limitations period reset by the October
      2018 order amending the language of Martinko's judgment**

      Finally, Martinko contends that the October 2018 amendment
to the terms of his sentence resulted in a new judgment against
him, creating a new one-year limitations period for seeking
habeas relief.  This argument lacks merit as the October 2018
amendment did not sufficiently change the original judgment
against Martinko to create a new limitations period for Martinko
to file habeas claims.

      "[A]n application for writ of habeas corpus by a state
prisoner is inextricably bound to the judgment pursuant to which
the prisoner is being held . . . ."  Gonzalez v. Sherman, 873
F.3d 763, 768 (9th Cir. 2017).  This is because under § 2254,
the prisoner's petition "seeks <u>invalidation</u> (in whole or in
part) <u>of the judgment</u> authorizing the prisoner's confinement."
Magwood, 561 U.S. at 332 (quoting Wilkinson v. Dotson, 544 U.S.
74, 83 (2005)) (emphasis added by Magwood).  As a result,
changes to a state prisoner's sentence can in fact reset AEDPA's
one-year limitations period if the change results in a new
judgment.  See Magwood, 561 U.S. at 326 (finding that a
petitioner was challenging "a new judgment for the first time"
when the petitioner raised a new habeas claim in a second-in-

time habeas petition after he was resentenced); see also
Gonzalez, 873 F.3d at 769 ("[A] change to a defendant's sentence
is a change to his [or her] judgment."). But "not every change
to a criminal sentence creates a new judgment" for purposes of
calculating AEDPA's one-year limitations period. See United
States v. Buenrostro, 895 F.3d 1160, 1165 (9th Cir. 2018). To
"create a new judgment" that resets the limitations period, the
"change to a sentence must be accompanied by a legal
invalidation of the prior judgment." Id.

Though the First Circuit Court of Appeals has not
specifically opined on this issue, several other Circuit Courts
of Appeal have found that clerical and ministerial changes to an
existing judgment do not result in a "new judgment" that
restarts the limitations period for habeas claims. See, e.g.,
United States v. Ledesma-Cuesta, 476 F. App'x 412, 412 n. 2 (3d
Cir. 2012) (per curiam). In Marmolejos v. United States, for
example, the Second Circuit Court of Appeals held that "an
amended judgment merely correcting errors that were clerical,"
such as the spelling of the prisoner's name and the
identification number listed, "does not constitute a 'new
judgment'" for purposes of AEDPA's procedural gatekeeping
provisions. 789 F.3d 66, 70-72 (2d Cir. 2015). Similarly, in
May v. Kansas, the Tenth Circuit Court of Appeals held that an
amended journal entry of judgment correcting an error stating

27

that a state prisoner's sentences were to be served
consecutively, when under Kansas law, they were to be served
concurrently, did not make the prisoner's "convictions non-final
or reset the date of the state court judgment for . . .
timeliness" purposes. 562 F. App'x 644, 645 (10th Cir. 2014).

Though many of these cases arose in the context of a second
or successive petition, the procedural question at issue in
those cases is no different than the timeliness question
presented by Martinko's instant petition. Like in Magwood, May,
and other cases cited by the parties, the key question in this
case is whether, under New Hampshire law, the October 2018
amendment to Martinko's judgment created a "new judgment" for
purposes of calculating the one-year limitations period under
AEDPA. Here, the Superior Court's October 2018 order amending
Martinko's sentence simply changed the wording on his third
sentence (Charge ID 936557c) from "may be suspended by the Court
on application of the defendant" to "shall be suspended" to
conform the arguably discretionary word — may — with the
mandatory language memorialized in Martinko's plea agreement.
See Oct. 29, 2018 Order on Mot. to Amend Sentence, Martinko, No.
219-2013-CR-521; Martinko's Oct. 10, 2018 Mot. to Amend
Sentence, id. ¶¶ 12-16. This change did not require that
Martinko be resentenced. See Magwood, 561 U.S. at 326. Nor did
it invalidate or significantly alter the terms of his original

28

judgment.  To the contrary, as stressed by the Superior Court, the "remainder of his sentence . . . remains as imposed on June 13, 2014 . . . ."  Order on Mot. to Amend Sentence, supra, at 1.

Martinko points to no authority showing that a minor revision which serves to clarify or correct the terms of a prisoner's sentence to comport with the intentions of the parties at sentencing either negates the original judgment imposed or restarts the limitations period for seeking habeas relief.  And neither the nature nor the extent of the changes to Martinko's judgment suggests differently.  Accordingly, Martinko's instant petition simply challenges the terms of the judgment that went into effect against him on June 13 2014.

Because Martinko did not file the instant petition on or before July 14, 2015, when the one-year limitations period for seeking collateral relief from his June 2014 judgment expired, his petition is untimely and should be dismissed on that basis.

## IV.  <u>Certificate of appealability</u>

Rule 11(a) of the § 2254 Rules requires the court to "issue or deny a certificate of appealability ("COA") when it enters a final order adverse to the party."  Id.  Here, the ground for dismissal is procedural and not substantive.

> When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition

> states a valid claim of the denial of a constitutional
> right and that jurists of reason would find it
> debatable whether the district court was correct in
> its procedural ruling.

Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Reasonable jurists

would not find it debatable that the amended § 2254 petition is

untimely.  Accordingly, the district judge should decline to

issue a certificate of appealability.

## V.    Conclusion

For the foregoing reasons, the district judge should dismiss

Martinko's § 2254 petition as untimely.  Any objections to this

Report and Recommendation must be filed within fourteen days of

receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure

to file objections within the specified time waives the right to

appeal the District Court's order.  See United States v. De

Jesus-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37

v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010).

Andrea K. Johnstone
United States Magistrate Judge

November 9, 2020

cc:  David M. Martinko, pro se
     Weston R. Sager, Esq.